IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL ERWIN ACUNA,

                    Appellant,

    v.

ILLINOIS DEPARTMENT OF REVENUE, and
INTERNAL REVENUE SERVICE,

                  Appellees.

OPINION AND ORDER

22-cv-645-wmc

As part of his Chapter 7 bankruptcy proceeding in the U.S. Bankruptcy Court for the Western District of Wisconsin, appellant Michael Erwin Acuna pursued an adversarial complaint against Appellees, the Internal Revenue Service ("IRS") and the Illinois Department of Revenue ("IDOR"). The bankruptcy court granted summary judgment for the IRS on Count I of that complaint and for the IDOR on Count IV, concluding that Acuna could not void or discharge his federal or state tax liabilities. On reconsideration, the bankruptcy court affirmed those conclusions. Appellant raises many of the same arguments rejected by the bankruptcy court in granting summary judgment to appellees and again in denying his motion for reconsideration. For the reasons described below, this court affirms the bankruptcy court's ruling.

BACKGROUND

A. Background

In 2016 and 2017, Acuna incurred federal income tax liabilities of $29,000 and $134,500, respectively. In September 2019, the IRS filed a Notice of Federal Tax Lien

("NFTL") against Acuna in Chippewa County, Wisconsin, although at the time and continuing through the date of his Chapter 7 petition, Acuna lived in Rusk County, Wisconsin.[1]

Though currently residing in Wisconsin, Acuna previously lived in Illinois. In addition to his federal tax liabilities, his Chapter 7 adversary proceedings also addressed his Illinois tax liabilities for the years 2016-2018, including his unpaid 2017 Illinois income taxes that remain in dispute on appeal. The parties agree that Acuna timely filed his 2017 Illinois Individual Income Tax Return. Later, he filed an amended federal income tax return for the 2017 tax year, which the IRS accepted in January 2019. The IRS's acceptance of the amended return triggered Illinois reporting requirements, 35 Ill. Comp. Stat. 5/506(b), including notifying the IDOR of the changed federal income tax assessment within four months of the IRS's acceptance. After Acuna timely filed an amended Illinois Income Tax Return in February 2019 (Form IL-1040-X), IDOR accepted that return and reported $13,560 in taxes due for the 2017 tax year.

Acuna then filed a Chapter 7 bankruptcy petition in July 2021. On his bankruptcy schedules, Acuna listed 34 items of personal property, none of which were in Chippewa County, and he swore that he owned no real property. Additionally, he did not list his 2016 and 2017 federal tax liabilities as disputed. The clerk of court for the bankruptcy court issued an Official Form 309A, Notice of Chapter 7 Bankruptcy Case – No Proof of Claim Deadline – to all of Acuna's creditors, directing them not to file proofs of claim. At

---

[1] On the date of his bankruptcy petition, Acuna resided at N836 School Road, New Auburn, WI, 54757, which is apparently in Rusk County, Wisconsin. The ZIP Code for New Auburn addresses covers multiple counties, including Chippewa, Barron, and Rusk counties.

the conclusion of the bankruptcy proceedings, the bankruptcy court awarded Acuna a Chapter 7 discharge.

## B. Adversary Proceeding

In Count 1 of his second amended adversary complaint, Acuna asked the bankruptcy court to determine the validity of his remaining federal tax liens. Neither Acuna nor the IRS filed a complaint to determine whether his federal income tax debts are excepted from Chapter 7 discharge under any subpart of 11 U.S.C. § 523(a)(1). Acuna then moved the bankruptcy court for summary judgment on the grounds that: (1) the IRS's tax liens were void and could be "stripped" under 11 U.S.C. § 506(d); and (2) those liens were both avoidable and permanently void under 11 U.S.C. § 522(h). While the IRS agreed that the liens were avoidable under § 522(h), it argued that the liens were not void under § 506(d) or void 'forever and for all purposes' under § 522(h).

The bankruptcy court denied Acuna's motion for summary judgment as to the first issue, holding that the liens were not void under § 506(d)(2) as a matter of law. Instead, the court granted summary judgment to the IRS as the nonmoving party on that issue under Federal Rule of Civil Procedure 56(f). *In re Acuna*, 2022 WL 3021677, at *3 (Bankr. W.D. Wis. July 29, 2022). Specifically, because the IRS did not file its NFTL in Acuna's county of residence, the bankruptcy court held that the IRS's liens were neither valid against the Chapter 7 bankruptcy trustee nor valid against the real or personal property of the estate. *Id.*; 26 U.S.C. § 6323(f)(1)(A)(i-ii); Wis. Stat. § 779.97(2)(b), (c)(4). Still, the bankruptcy court concluded that the IRS's failure to file its NFTL properly had no impact on the validity of its liens against Acuna *himself*. *In re Acuna*, 2022 WL at *4. Relying on

3

*Dewsnup v. Timm*, 502 U.S. 410 (1992), the bankruptcy court further determined that the federal tax liens were "allowed secured claims" under § 506(d) but for the failure of the IRS to file a proof of its claim, so the liens are not void under the exception provided for that circumstance in § 506(d)(2). *Id*. Based on the undisputed factual record and the applicable law, therefore, the court granted summary judgment to the IRS as the nonmoving party under Rule 56(f).

As to the second issue, the court also held that the liens were avoidable, but not permanently void under § 522(h), because the IRS could still file a complaint to determine that the tax debt was nondischargeable under § 523(a)(1)(C). Although Acuna moved the court at summary judgment to determine whether the IRS's liens were dischargeable under § 523(a)(1)(C), the court declined to decide the issue because neither party filed a nondischargeability claim as to the federal tax liens, and Acuna only raised the merits at summary judgment. *Id*. at *4-5. The bankruptcy court thus denied summary judgment to Acuna and declined to hold that the liens were void "forever and for all purposes." *Id.*

Acuna later moved to alter and amend the district court's grant of summary judgment on Count I, arguing that: (1) the bankruptcy court mischaracterized his arguments about § 506(d); (2) the bankruptcy court improperly granted summary judgment to the IRS under Rule 56(f); and (3) the court should have ruled on the nondischargeability of the federal tax liens on the merits. *In re Acuna*, 2022 WL 15525791, at *2 (Bankr. W.D. Wis. Oct. 27, 2022). However, the bankruptcy court declined to alter its earlier decision. *Id.* at *6.

4

As to § 506(d), Acuna argued in his motion that the bankruptcy court "merely assumed that if [the IRS] had filed a proof of claim, it would have been an allowed secured claim, rather than an allowed *unsecured* claim," which would be void under § 506(d). *Id.* at *2. The bankruptcy court reiterated that while the bankruptcy trustee prevails over the unrecorded tax liens, the liens against Acuna himself cannot be stripped under the Supreme Court's interpretation of § 506(d) in *Dewsnup v. Timm*, 502 U.S. 410 (1992), and that the exception under § 506(d)(2) applied. Thus, the liens were not void. *Acuna,* 2022 WL 15525791, at *3-4. The bankruptcy court further concluded that its *sua sponte* grant of summary judgment to the nonmoving party under Rule 56(f) was appropriate because: the factual record was undisputed; the moving party identified no evidence omitted from consideration; the issue for decision was purely a matter of law; and the moving party was not prejudiced by its decision. *Id.* at *5. Finally, the bankruptcy court held that it properly declined to decide whether any of the federal tax debt is nondischargeable as to exempt property under § 523(a)(1)(C), since neither party filed a complaint to determine that question. *Id.* at *6.

As for Count IV of Acuna's adversarial complaint, Acuna and IDOR filed cross-motions for summary judgment, seeking resolution as to IDOR's 2017 tax claim. IDOR argued that its claim for Acuna's unpaid 2017 Illinois income taxes is nondischargeable under 11 U.S.C. § 523(a)(1)(A) because the tax liability is an "eighth priority" claim excepted from Chapter 7 discharge under § 507(a)(8)(1)(A). In turn, Acuna argued that the IDOR's tax claim is not an eighth priority tax claim and, therefore, is dischargeable since Acuna was not "required" to file an amended "return" for his 2017 state income taxes

5

after the IRS determined his 2017 federal income tax liability changed. The bankruptcy court also granted summary judgment in IDOR's favor because Illinois law requires that an Illinois taxpayer file an amended income tax return to notify the IDOR of a change in their federal income tax liability. *In re Acuna*, 643 B.R. 583, 591 (Bankr. W.D. Wis. 2022); 35 Ill. Comp. Stat. 5/506(b).

Finally, Acuna moved under Rule 59(e) to alter or amend the bankruptcy court's grant of summary judgment for IDOR on Count IV, again arguing the 2017 Illinois income taxes had to be dischargeable because the IDOR could prescribe some other form of "notification" than an amended return under 35 Ill. Comp. Stat. 5/506(b), and IDOR's interpretation of section 5/506 would render certain provisions of the Illinois administrative code redundant. However, concluding that Acuna raised no new facts or legal arguments not previously presented, the bankruptcy court found no "manifest error of law or fact" justifying reconsideration under Rule 59(e). *See In re Acuna*, 2022 WL 6795155, at *2 (Bankr. W.D. Wis. Oct. 11, 2022) ("Copying, bolding, and underlining passages from Debtor's prior brief—already seen and considered by the Court—does not carry Debtor's burden under Rule 59(e) in proving that the Court committed manifest legal error.").

OPINION

On appeal, Acuna argues the bankruptcy court erred in its grants of summary judgment. As to the IRS judgment, Acuna once more argues that: (a) the federal tax liens are void under 11 U.S.C. § 506(d); (b) the bankruptcy court erred in granting summary judgment to the IRS under Rule 56(f); and (c) the bankruptcy court should have ruled on

6

the merits as to whether the federal tax liens are dischargeable under 11 U.S.C. § 523(a)(1)(C). As for the IDOR judgment, Acuna challenges the court's ruling that his Illinois tax liability is an eighth priority claim under 11 U.S.C. § 507(a)(8)(A)(i), making it nondischargeable. Each argument presents a question of law, and the district court reviews the bankruptcy court's conclusions of law *de novo*. *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004). The court addresses these arguments in turn.

## I. IRS

### A. IRS tax liens are not void under 11 U.S.C. § 506(d)

A federal tax lien arises when "any person liable to pay any tax neglects or refuses to pay the same after demand," and attaches to "all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. While such a lien "arise[s] at the time the [tax] assessment is made," 26 U.S.C. § 6322, a federal tax lien imposed under § 6321 "shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until" the United States properly records notice of the lien. 26 U.S.C. § 6323(a); *United States v. Allahyari*, 980 F.3d 684, 690 (9th Cir. 2020) ("federal tax liens are invalid against the interests held by these specific classes until the United States properly records notice of the liens").

In this case, since the IRS did not properly record the notice of lien in the right county, that tax lien is not valid against any purchasers or judgment lien creditors under § 6322. Further, under § 544(a), a Chapter 7 trustee is *both* a bona fide purchaser of real property *and* a judgment lien creditor as to personal property. *Hypothetical lien creditor*, 3

7

Norton Bankr. L. & Prac. 3d § 63:5.  In short, as the IRS concedes, it does not have an "allowed claim" as to the Chapter 7 *estate property*.  11 U.S.C. § 506(a) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property.").

Thus, the dispute in this appeal hinges on whether the federal tax liens, as applied to property *outside* of the estate, survive discharge as "allowed secured claims" under § 506(d).  Section 506(d) states that "[t]o the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void," *unless* (among other reasons) "such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title."  11 U.S.C. § 506(d)(2).  To rephrase, where a lien only fails to be an "allowed secured claim" because the party did not file a proof of claim, the lien passes through bankruptcy unaffected.  *Id.*

As noted above, the U.S. Supreme Court addressed the operation of § 506(d) in *Dewsnup,* in concluding that a debtor could not "strip down" a creditor's partially underwater lien on real property to the value of the property at the time of discharge under § 506(d).  Instead, the Supreme Court held that the term "allowed secured claim" in § 506(d) was not an "indivisible term of art."  502 U.S. at 415.  Reading "allowed" and "secured" separately, the Court held that because "the claim at issue" had been "'allowed' pursuant to § 502 of the Code," and "'secured' by a lien with recourse to the underlying collateral," it fell outside "the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured."  *Id.*

"In other words, *Dewsnup* defined the term 'secured claim' in § 506(d) to mean a claim supported by a security interest in property, regardless of whether the value of that property would be sufficient to cover the claim." *Bank of Am., N.A. v. Caulkett*, 575 U.S. 790, 794 (2015) (extending *Dewsnup* to cover entirely underwater liens). Thus, the zero-value of underlying collateral at the time of discharge is generally immaterial under § 506(d), because a "bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*." *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991). By extension, *Dewsnup* defined "secured claim" in § 506(d) to mean a claim "with recourse to the underlying collateral," 502 U.S. at 415, or as the Supreme Court later described it in *Caulkett*, "a claim supported by a security interest in property," 575 U.S. at 794, but independent of the definition of "secured claim" under § 506(a).

Nevertheless, appellant continues to argue that a federal tax lien is not an "allowed secured claim" under § 506(d) and is not subject to any exceptions, by virtue of the fact that had the IRS filed a proof of claim, that claim would not have *necessarily* been "allowed" because he or the Chapter 7 trustee "could have successfully objected on the basis that the lien was unperfected and subject to the Trustee's and the Debtor's avoiding powers." (Appellant's Br. (dkt. #5) at 25.) Additionally, he argues that the lien was not a "secured" claim under § 506(d) because the IRS failed to file an NFTL and, therefore, did not have a "secured" claim against the bankruptcy estate. As such, he argues that lien is now void under § 506(d).

9

Starting with the second term, the government's claim is "secured" by collateral -- property that is not part of appellant's estate. *Dewsnup* and *Caulkett* clarified that the term "secured" under § 506(d) means "supported by a security interest in property," which includes property *outside the bankruptcy estate*. *Caulkett*, 575 U.S. at 794. Here, the IRS asserts that there are three types of non-estate property that are collateral for its lien after Chapter 7 discharge: (1) exempt property that is collateral for nondischargeable tax debt under § 523(a)(1); (2) nonexempt property abandoned by the estate; and (3) property excluded from the estate by law. While appellant concedes all three are *possible* collateral for a tax lien under the applicable law, he argues in circular fashion that the lien here cannot be "secured" against these types of property because: a court has not yet determined whether the federal tax debt is nondischargeable; the trustee has not yet abandoned any nonexempt estate property; and there is no excluded property at issue in the bankruptcy proceeding.[2] As the *Caulkett* Court observed, however, a "secured claim" is not void under § 506(d) simply because its collateral value is zero at present. 575 U.S. at 794-795. Thus, the court agrees with the bankruptcy court that the federal tax lien is "secured" under the interpretation of § 506(d) set forth by the Supreme Court.

Appellant's argument that the bankruptcy court erred in relying on *Dewsnup* and *Caulkett*'s interpretation of a "secured claim" under § 506(d) because the liens in those cases were not tax liens surviving bankruptcy, but rather mortgage liens, is even less

---

[2] Appellant also argues that any ERISA qualified pension plans or other applicable retirement plans are excluded from the bankruptcy estate under the law. Even accepting this as true, the IRS still only needs recourse to collateral in *one* of the three categories of non-estate property for the tax lien to be 'secured' under § 506(d). *See Dewsnup*, 502 U.S. at 415. Accordingly, the other two categories of non-estate collateral advanced by the IRS are sufficient to 'secure' the tax liens under § 506(d).

persuasive. The Supreme Court in *Dewsnup* and *Caulkett* emphasized that "secured claims" under § 506(d) are not tethered to the creditor's interests in the collateral *in the bankruptcy estate* as defined in §506(a). 502 U.S. at 415-417; 575 U.S. at 793-794. Rather, the government's tax assessment lien is a valid "claim supported by a security interest" in non-estate property *only*, analogous to the mortgage lien in *Caulkett* that had zero collateral value in the estate. *Caulkett*, 575 U.S. at 794; *see also In re Phillips*, 197 B.R. 363, 366 (M.D. Fla. 1996) ("Section 506 would not control . . . property in which the estate has no interest. . . . *Dewsnup* precludes such relief.")

Again, the court agrees with the IRS that its tax lien was not an "allowed" claim "due only to the failure of [the IRS] to file a proof of such claim," rather than disallowed under § 506(d)(2). Under *Dewsnup*, since the "the claim has not been disallowed, then the lien passes through bankruptcy unaffected." *In re Burgos*, 2025 WL 2812258, at *2 (Bankr. W.D. Pa. Sept. 30, 2025); *Caulkett*, 575 U.S. at 794-795 ("Under [*Dewsnups*'s] definition, § 506(d)'s function is reduced to 'voiding a lien whenever a claim secured by the lien itself has not been allowed'") (citing *Dewsnup*, 502 U.S. at 416). "This construction of § 506(d) works by negative implication. Unless the claim secured by a lien has been disallowed. . ., the lien is not void. Nothing in chapter 7 authorizes a broader power to cancel liens." *In re Burgos*, 2025 WL at *2. As *Dewsnup* explains, "liens are creatures of state law, and Congress did not hand bankruptcy courts a general warrant to erase them." *Id.* Since creditors were instructed not to file proofs of claim, that claim was not *dis*allowed, and "section 506(d)(2) expressly preserves liens where no proof of claim is filed." *Id.*

11

As for appellant's remaining argument that the lien *could* have been disallowed if proof of claim had been filed, and that the bankruptcy court erred by failing to conduct a hypothetical analysis of whether the claim would have been "allowed" under § 501 and § 502, appellant cites *no* authority requiring the bankruptcy court to entertain all hypothetical disallowance arguments when considering whether liens are void under § 506(d).[3]  This result would seem particularly unfair in situations where the bankruptcy is administered as a "no-asset," chapter 7 proceeding, and creditors are affirmatively instructed by the court *not* to file proofs of claim.  *See In re Burgos*, 2025 WL at *2, n. 4.  More to the point, appellant repeatedly acknowledges that the IRS *had* a valid claim as to the unpaid federal taxes due under § 101(5)(A), which would have been an "allowed" albeit found "unsecured" *as to the bankruptcy estate* under § 506(a).  (Bkr. Adv. P. (dkt. #33) at 13); (Appellant's Reply Br. (dkt. #10) at 8.)

Accordingly, while the IRS does not have a valid claim against the bankruptcy *estate property*, its claim is otherwise secured by the three types of *non-estate property* addressed above and satisfies the definition of "secured claim" under § 506(d), even if its value is currently zero.  *Caulkett*, 575 U.S. at 794.  And, the claim would have been "allowed" but for the IRS's failure to file a proof of claim. As such, this court agrees with the bankruptcy court that the federal tax liens are not void under § 506(d)(2) and affirms summary judgment on this issue.[4]

---

[3] Nor could this court find any such requirement.

[4] Because the court concludes that the tax liens are not void under § 506(d)(2), the court declines to address the parties' additional arguments about the applicability of § 522(c)(1) if the court were to have held otherwise.

**B. The bankruptcy court did not err in granting summary judgment to the IRS under Fed. R. Civ. P. 56(f).**

Before the amendment of Rule 56(f) in 2010, the Supreme Court recognized that trial "courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence" related to a claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Now, Rule 56(f)(1) states that trial courts may grant summary judgment for a nonmovant after giving notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(1).[5] This amendment codified "a number of related procedures that [grew] up in practice" -- namely, that a "judge must notify the litigants, and invite the submission of evidence and legal arguments, before resolving a case . . . using a procedure they did not propose." *Pactiv Corp. v. Rupert*, 724 F.3d 999, 1001 (7th Cir. 2013); Fed. R. Civ. P. 56(f) Advisory Committee's Note to 2010 Amendment. The rationale behind this rule is to avoid judges "decid[ing] suits without warning on the basis of considerations the litigants were not contesting." *Pactiv Corp.*, 724 F.3d at 1001; *see also Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 604 (7th Cir. 2015) (finding summary judgment for the nonmovant without providing notice under Rule 56(f)(1) inappropriate where the record is not fully developed and "universe of [relevant] facts" not "identified and agreed upon").

In the appellate context, the Seventh Circuit has interpreted Rule 56(f)(1) to mean that, provided the parties do not dispute the material facts and have fully briefed the legal issue on appeal after sufficient notice and chance to respond, the court may order entry of

---

[5] Under Federal Rule of Bankruptcy Procedure 7056, Rule 56 applies to all adversary proceedings.

summary judgment for the nonmovant on remand. *Lusk v. Cole*, 779 F. App'x 403, 406 (7th Cir. 2019).[6]  Similarly, where the nonmoving party cannot show prejudice for failure to receive notice under Rule 56(f), "relief is not warranted" on appeal. *Roland v. United States Dep't of Just.*, 2023 WL 8251312, at *1 (7th Cir. 2023).  Even where a trial court errs in granting summary judgment under Rule 56(f)(1) by failing to give notice, such a "technical error does not compel a remand" when "summary judgment for [the nonmovant] was clearly appropriate." *Gabb v. Wexford Health Sources, Inc.*, 945 F.3d 1027, 1035 (7th Cir. 2019); *see also Hassebrock v. Bernhoft*, 815 F.3d 334, 343 n.3 (7th Cir. 2016) (declining to "remand a case for trial when we know the plaintiffs cannot win," calling it "a waste of time, money, and judicial resources.")

Because the bankruptcy court did not give notice and an opportunity to respond before granting summary judgment to the IRS under Rule 56(f), appellant nevertheless argues unfair prejudice in this case.  For example, he alludes to developing more facts about the federal tax lien being dischargeable or developing his argument that a "hypothetical" proof of claim would have been disallowed under § 506(d).  In response, the IRS points out that the bankruptcy court met standards recognized in other circuits for the grant of summary judgment *sua sponte* under Rule 56(f) -- namely, that the issue decided was purely

---

[6] "We thus conclude that Lusk properly exhausted the available administrative remedies. Although he did not cross-move for summary judgment on the exhaustion defense in the district court, under Federal Rule of Civil Procedure 56(f)(1), a non-movant may receive summary judgment after notice and a chance to respond. On appeal, Lusk has asked for the entry of summary judgment, and defendants have responded. Because the facts are undisputed, we vacate summary judgment for defendants and remand with instructions to enter summary judgment in Lusk's favor on the defense of exhaustion and proceed with the remainder of the case." *Lusk v. Cole*, 779 F. App'x 403, 406 (7th Cir. 2019).

legal; the factual record was fully developed; and the parties did not dispute the material facts. In any case, the IRS correctly asserts that appellant fails to show actual prejudice from lack of notice because the merits of nondischargeability were not appropriately before the court, and the decisions below sufficiently addressed the § 506(d) issue.

In the end, the court agrees that appellant has failed to show that the grant of summary judgment without notice prejudiced him in the proceedings. To the contrary, the bankruptcy court addressed *both* arguments that Acuna now states he wanted to develop in greater detail after the parties briefed the same issue for a second time on reconsideration. *Roland*, 2023 WL at *1. And, the parties fully briefed those arguments on appeal, giving appellant notice and a chance to respond under Rule 56(f). *Lusk*, 779 F. App'x at 406. Indeed, even if the bankruptcy court committed a technical error by failing to give appellant notice and an opportunity to respond further before granting summary judgment to the nonmovant under Rule 56(f), a remand is not warranted since this court also reviewed *de novo* on appeal whether the tax liens were void under § 506(d) based on the undisputed factual record, and any further litigation on this issue in the court below would not serve the interests of judicial economy. *Gabb*, 945 F.3d at 1035; *Hassebrock*, 815 F.3d at 343.

### C. The Bankruptcy Court did not err in refusing to decide on the merits whether the federal tax liens were dischargeable under 11 U.S.C. § 523.

Appellant also argues that the bankruptcy court erred by refusing to decide on the merits whether the federal tax liens were dischargeable under 11 U.S.C. § 523. First, he argues that the bankruptcy court's failure to address the issue on the merits violated Fed.

15

R. Bankr. P. 4007(a).  Under Rule 4007(a), either party may file a *complaint* that initiates an adversary proceeding to determine dischargeability under § 523(a)(1)(C).  Here, neither party filed such a complaint as to the federal tax liens in the proceedings below.  As such, the issue was not properly before the court at summary judgment.  *See* Fed. R. Civ. P. 8(a).

Second, appellant argues that the bankruptcy court should have decided the issue even though neither party filed a complaint to determine dischargeability because the IRS raised the merits as a defense to its claim that the tax liens were not void under § 506(d).  As to asserting a defense under § 506(d), however, the IRS simply argued that its federal tax lien provided recourse to appellant's exempt property *if* the IRS later filed a claim to determine that the debt is nondischargeable.  This argument did not put dischargeability at issue in the adversary proceeding below.

Third, and finally, appellant argues that he was entitled to the relief of discharge of the debt, so the court should have determined as such under Fed. R. Civ. P. 54(c), despite his failure to plead the claim.  Rule 54(c) instructs courts that "final judgment[s] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  However, Rule 54(c) does not allow a court to grant relief where a party has not properly raised an issue.[7]  "While it is undoubtedly true that district courts

---

[7] Fed. R. Bankr. P. 7008 and 7054 apply Fed. R. Civ. P. 8 and 54 to all adversary proceedings, respectively.  While Rule 54(c) allows trial courts to grant merited relief notwithstanding errors in the pleadings, the Rule "does not permit a court to impose liability where none has been established."  *Old Republic Ins. Co. v. Emps. Reinsurance Corp.*, 144 F.3d 1077, 1081 (7th Cir. 1998) (citations omitted); *see also Diaz v. Bautista*, 2012 WL 13005556, at *5 (C.D. Cal. June 29, 2012) ("In granting relief, the Court must read Rule 54(c) so as not to eviscerate Rule 8(a)(3)'s express and unambiguous direction that the plaintiff include a demand for relief in her pleadings.")

should afford [each party] the relief to which it is entitled without regard to errors in the pleadings, Rule 54(c) does not allow the district court to award relief based on a theory that was not properly raised at trial," or properly raised *at all*, as is the case here. *Old Republic*, 144 F.3d at 1080. Therefore, the court affirms the bankruptcy court's decision not to address the merits of appellant's argument that the federal tax lien is somehow dischargeable.[8]

## II. Illinois Department of Revenue

The court now turns to appellant's argument that a federal change notification under 35 ILCS 5/506 is a not a "required return," so IDOR lacks an eighth priority claim on his 2017 Illinois tax liability, making that debt dischargeable. Eighth priority claims are "allowed unsecured claims of governmental units," § 507(a)(8)(A)(i), and they are nondischargeable from Chapter 7 bankruptcy relief. 11 U.S.C. § 523(a)(1)(A). As the bankruptcy court explained, there are three requirements for a state income tax debt to meet the definition of an eighth priority claim under § 507(a)(8)(A)(i): "First, it must be a debt for a taxable year ending on or before the petition date. Second, the debtor must be required to file a 'return' for that tax debt. Third, that 'return' must be last due, including extensions, after three years before the petition date." *In re Acuna*, 643 B.R. 583, 591.

The principal issue on appeal in this case is whether 35 ILCS 5/506 required Acuna

---

[8] Because the issue of dischargeability was never appropriately before the bankruptcy court, the court finds no need to determine whether Acuna had constitutional standing to raise the issue. *Cf. Hinton v. United States*, 2011 WL 1838724, at *1 (N.D. Ill. May 12, 2011) (deciding whether the debtor had standing after debtor properly *commenced an adversary proceeding* asking the bankruptcy court to determine whether unenforced IRS tax liens were dischargeable under § 523(a)(1)).

to file a "return."  Under section 5/506, a taxpayer must notify IDOR if either the IRS or

a court determines that their federal taxable income has changed for a certain tax year.

"Such notification shall be in the form of an amended return or other such form as the

Department may by regulations prescribe," and the notification "shall be signed by such

person or his duly authorized agent."  35 ILCS 5/506.  IDOR has promulgated no

regulations prescribing any other kind of permissible federal change notification other than

an amended return.  The applicable regulations state:

> if a taxpayer concedes the accuracy of a change or correction affecting the
> computation of his Illinois base or net income (viz., a change of tax liability
> reported on his federal income tax return. . .), any deficiency in Illinois income
> tax liability resulting from the taxpayer's report of the federal change on Form IL-
> 506, Form IL-1040X, or Form IL-1120X, as required under the provisions of
> IITA Section 506(b), is to be deemed assessed on the date of filing such report.

86 Ill. Admin. Code § 100.9200(4).  The forms listed in § 100.9200(4) are all amended

income tax return forms.  These amended returns, like all other returns filed under the

Illinois Income Tax Act ("IITA"), must be verified by a written declaration made under

penalty of perjury.  35 ILCS 5/504.

Appellant argues that the amended return requirement under section 5/506 is a

"default form of notification," rather than a "requirement" under the statute, since IDOR

could prescribe other methods through which a taxpayer must give notice of a federal

change.  Thus, he argues, filing an amended return is not "required" to notify the IDOR of

a federal change, so his Illinois tax liabilities cannot be considered eighth priority claims.

IDOR responds that the plain meaning of section 5/506 forecloses this interpretation -- the

notification of the federal change "*shall* take the form of an amended return."  35 ILCS

5/506 (emphasis added).

18

This court agrees with IDOR and the bankruptcy court.  The plain meaning of section 5/506 mandates taxpayers to file an amended return to notify the IDOR of a federal change.  The mere possibility that IDOR might allow other notification methods does not alter section 5/506's prescription that: "such notification *shall* be in the form of *an amended return*." (emphasis added.)  Thus, a straightforward reading of the statute required Acuna to file an amended return, making the 2017 Illinois tax debt an eighth priority claim under § 507(a)(8)(A)(i).

Alternatively, appellant argues that, because section 5/506(b) states only that a "signature" is required for the federal change notification, an amended return filed under 5/506 is merely a "notification," rather than a "return," contrasting section 5/506 to section 5/504, which requires that all "returns" or "notices" be filed under penalty of perjury.  As such, he argues, the federal change notification under § 5/506 fails to meet the definition of "required return" under § 507(a)(8)(A)(i).  IDOR responds that the difference between providing a "notice" under section 5/504 and a "notification" under section 5/506 is legally indistinguishable, since 'notification' is defined as "a written or printed matter that gives notice" in the dictionary.[9]  Moreover, the "notification" required under section 5/506 is indeed a tax return that must be signed under penalty of perjury.

This court again agrees with IDOR and the bankruptcy court.  That section 5/504 may require returns filed under the IITA to be signed under penalty of perjury fails to relieve Acuna from the requirement for "notifications" in the form of amended returns under section 5/506.  Perhaps even more to the point, every applicable amended return

---

[9] Neither term is specifically defined in the IITA.

form requires the taxpayer to declare that the return is truthful under penalty of perjury. Indeed, the return appellant actually submitted was signed under penalty of perjury. Therefore, again, an amended return submitted under section 5/506 is a required "return" under § 507(a)(8)(A)(i).

Appellant next argues that a "notification" under section 5/506 is not a "return" at all, because it is separately assessed as a federal change by IDOR under 86 Ill. Admin. Code § 100.9200(4), rather than initially assessed as a return under § 100.9200(1). Appellant argues that this distinction disqualifies the federal change notification from being an amended return because a taxpayer could "refuse to 'concede the accuracy'" of a change in federal tax liability under § 100.9200(4) on their amended return form. The court also finds this argument unavailing. Whatever may come of a taxpayer's "refusal to 'concede the accuracy'" of a change in his federal tax liability on an amended state income tax return, as appellant suggests, the forms that a taxpayer may use to notify IDOR of a federal change under § 100.9200(4) -- here, Form IL-506, Form IL-1040X, or Form IL-1120-X -- are *all* amended tax returns that must be signed under penalty of perjury.[10] Thus, under § 100.9200(4), a taxpayer must file an amended return that meets the definition of a "required return" under § 507(a)(8)(A)(i).

Finally, appellant argues that § 523(a)(1)(B) distinguishes a "return" from a

---

[10] Acuna further argues that a federal change notification under section 5/506(b) is not a "return" because § 5/506(b) only states that a signature is required on the notification, and therefore a taxpayer could 'cross out' the part of the amended return form that requires the filer to sign the form under penalty of perjury. The text of § 5/506(b), by requiring a signature, does not support an inference that a taxpayer filing an amended return with IDOR could simply dispose of the requirement that the taxpayer sign under penalty of perjury under section 5/504, and does not lend support to Acuna's argument that a "notification" is not a "return" under the Bankruptcy Code.

"notice" because  § 523(a)(1)(B) states that tax debts are nondischargeable where "a return, or equivalent report or notice, if required, was not filed or given."  Thus, he argues, the amended tax return that he filed was nothing more than a "notice," not a "return."  IDOR responds that this provision of the Bankruptcy Code was added with respect to states in which taxpayer forms are referred to as "notices" (rather than "returns"), and that such terminology was added to reflect their *equivalent* status in determining dischargeability.  *Maryland v. Ciotti (In re Ciotti)*, 638 F.3d 276, 279 (4th Cir. 2011).  Again, the court finds appellant's argument unconvincing -- even if the terms in § 523(a)(1)(B) were distinct (and the court agrees with IDOR that they are likely not), § 5/506 still states that an Illinois taxpayer is required to notify IDOR of a federal change using an amended return.  As such, appellant's 2017 Illinois tax liability was an income tax debt for a taxable year before the petition for which a return was required within the three years before he filed his bankruptcy petition.  Therefore, IDOR's tax claim is an eighth priority claim under § 507(a)(8)(A)(i) and nondischargeable under § 523(a)(1)(A).  Accordingly, this court affirms the  bankruptcy court's grant of summary judgment to IDOR on this issue.

## ORDER

IT IS ORDERED that the bankruptcy court's grant of summary judgment to the IRS and the IDOR on the issues appealed is AFFIRMED, and Acuna's appeal is DENIED.

Entered this 29th day of January, 2026.

BY THE COURT:
/s/

_____
WILLIAM M. CONLEY
District Judge

21